# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MIKEL RAY HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-1018-C |
| | ) | |
| ROSS L. FISHER, M.D., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Mikel R. Henderson—an Oklahoma inmate currently in the custody of the Oklahoma Department of Corrections —sued multiple prison officials under 42 U.S.C. § 1983, Doc. 10, [1] alleging civil rights violations. Plaintiff is proceeding in forma pauperis and pro se. United States District Judge Robin J. Cauthron has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 5. Plaintiff brings suit individually against Defendants (1) Ross L. Fisher, M.D.; (2) Cheri Atkinson, Medical Administrator; (3) Jerold Braggs, Jr., Warden; and (4) Buddy Honaker, ODOC Medical Service Manager. Doc. 10. The court ordered a Special Report, Docs. 11, 26, and Defendants filed a Motion to Dismiss/Motion for Summary Judgment. Doc 27. Plaintiff

---

[1]     Citations to page numbers refer to this Court's CM/ECF pagination.

responded.  Doc. 28.  Defendants did not file a reply, and the matter is at issue and ready for disposition.

Plaintiff contends Defendants violated DOC Policy and his Fourteenth Amendment rights when they failed to abide by DOC procedures to address rule violations.  Doc. 10, at 15-18.  Plaintiff seeks monetary relief under this claim.  *Id.* at 18-19.  Because Plaintiff cannot establish a due process interest in this administrative proceeding, the undersigned recommends the court GRANT Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claims.

Plaintiff next contends Defendants violated his Eighth Amendment rights with respect to his medical treatment.  He seeks to be put back on his "chronic pain medication," as well as damages and costs.  *Id.* at 13-14.  The undersigned finds Plaintiff fails to state a violation of his Eighth Amendment rights, and recommends the court GRANT summary judgment to Defendants.

## I.    Background.

### A.    Plaintiff's medical history.

On June 14, 2007, Plaintiff was received into the custody of the ODOC. Doc. 26, at 4.  Presently and during the time period at issue in this case, Plaintiff has been housed at the Lexington Correctional Center.  *Id.* Ex. 1, at 1.

On November 23, 2013, Plaintiff was diagnosed with a "malignant neoplasm of [the] tongue," or tongue cancer. *See id.* Ex. 2, at 31. Between this diagnosis and December 2014, Plaintiff underwent surgery, radiation therapy, and a surgical scar revision and grafting. *Id.*; *see* Doc. 26, at 5. Plaintiff developed a sequela due to the cancer diagnosis and subsequent radiation therapy treatments, which can cause "chronic, neuropathic pain in the lower face and neck/hypopharyngeal areas." *Id.*

The record indicates that as of June 16, 2016, Plaintiff had been taking Norco, an opiate, for pain management for at least a year. *See id.* Ex. 2, at 30. Plaintiff's dose of Norco was reduced in the spring of 2016 from "20/650 mg" to "10/325 mg." *See id.* at 31-32. As of May 24, 2016, Plaintiff's Norco prescription "was administered three times daily in the form of a 10 milligram oral tablet (Norco 10)." Doc. 26, at 4.

The record reflects that as of May 24, 2016, "[a]ccusations by nursing staff" had already been made against Plaintiff for "diversion or misuse of narcotics" which "complicated" his pain management. *See id.* Ex. 2, at 31.[2] Defendant Fisher noted he had a "[f]rank discussion on topic made with [Plaintiff] today, letting him know [Defendant Fisher's] policy and actions that would be taken if given any legitimate reason to stop controlled meds (opiate

---

[2]     According to the record, it appears this was Plaintiff's first appointment with Defendant Fisher. *See* Doc. 26, Ex. 2, at 30.

& gabapentin). [Plaintiff] agreed to adhere to strict DOC pill line use policies & not give reason to suspect misuse or diversion." *Id.* at 34. Defendant Fisher also discussed with Plaintiff the "side effects, risks vs indication & benefit of long term opiate use," "why effort to gradually come down & off opiate to his benefit in future," the "[p]ain potentiation possibility from chronic opiate use," and the "[h]igh risk for opiate withdrawl if sudden stop use." *Id.* at 32. Dr. Fisher also counseled Plaintiff regarding "[i]ssues of diversion, misuse," explained there was "no tolerance for such behavior," and informed Plaintiff of "[c]onsequences to him if [he has] to stop opiate . . . ." *Id.*

The medical records indicate that in February of 2016, Plaintiff underwent what Defendant Fisher described as an "[i]nadequate past slow taper initiation of gabapentin trial . . . ." *Id.* Defendant Fisher noted the "starting dose too high & side effects limited use. No alternate neuropathic pain med mgmt. attempted." *Id.* On May 24, 2016, Defendant Fisher prescribed Plaintiff a taper of Gabapentin[3] to increase incrementally from 100 mg to 600 mg "at least for next 5-6 wks, anticipate longer indefinite if meet goal." *Id.* at 35. Defendant Fisher noted that his "[s]trategy . . . & emphasis [on] gradual taper up dose use of gabapentin [was] needed to get [Plaintiff] to

---

[3]    Gabapentin is also referred to as Neurontin throughout the record.

agree to plans," and that Plaintiff was "willing to retry gabapentin first after [Defendant Fisher's] education & counseling . . . ." *Id.* at 33-34.

At this same appointment on May 24, 2016, Defendant Fischer "add[ed] trial of nsaid – meloxicam . . . for adjuvant pain med [treatment]." *Id.* at 34. Plaintiff does not dispute these facts. *See* Doc. 28.

Plaintiff saw Defendant Fischer three weeks later on June 16, 2016. Doc. 26, Ex. 2, at 30. Defendant Fisher noted that he reviewed the Medical Administration Record and that it appeared Plaintiff "has not been taking gabapentin according to plans at all—in fact, mostly not taken it." *Id.* Defendant Fisher also noted that Plaintiff told him "that he had no adverse [symptoms] or perceived side effect while on 100 mg bid dose gabapentin initial starting." *Id.*

Plaintiff saw Defendant Fisher again on August 18, 2016. At this appointment, Defendant Fisher noted that Plaintiff was "unable to tolerate gabapentin (limiting nausea)," and that Plaintiff "gave adequate effort to try." *Id.* at 27. As a result, Defendant Fisher ordered that Plaintiff "remain off gabapentin." *Id.* at 29. Plaintiff does not dispute this appointment and subsequent removal from Gabapentin.

At this appointment on August 18, 2016, Defendant Fisher also continued to prescribe Norco. *Id.* at 27, 29. Defendant Fisher noted that "[n]o overt serious active side effects from chronic opiate use now evident, but by

5

[patient medical history], only marginal partial temporary pain reductions from use." *Id.* at 27. Defendant Fisher also noted "of past misuse or forced diversion—no such concerns been voiced by staff to me recently." *Id.* Plaintiff was prescribed Norco through December 1, 2016. *Id.* Defendant Fisher stated he had "nothing additional to offer re: pain med or mgmt. that realistically offers superior outcome or safety." *Id.* at 29. Plaintiff does not dispute these facts. *See* Doc. 28.

On May 3, 2017, Defendant Fisher discontinued Plaintiff's Norco prescription because Sara Nordstrom, LPN "caught [Plaintiff] palming/diverting Norco." Doc. 26, Ex. 2, at 28. Nordstrom was administering Plaintiff's pills and noticed "when inmate took meds out of the drawer he put an already empty medication cup on top of his crushed norco 10. [S]o when this inmate tipped the medication cups back to simulate proper admin of meds the crushed norco 10 was stuck in between [sic] the two medication cups." *Id.* at 23. In Plaintiff's progress note from the same day, Defendant Fisher noted that Plaintiff had been counseled before about diverting medication and the ODOC's no tolerance policy. *Id.* at 24. Defendant Fisher also noted "[t]here is questionable indication for long term narcotic use for his current situation [and] known objective clinical evidence." *Id.* Defendant Fisher indicated he would "not plan any alternate RX pain meds, including neuropathy meds." *Id.* Defendant Fisher stated Plaintiff "[h]as to live with consequences of his actions

[and] behavior [and] diversion of meds clearly support that he does not need med." *Id.*

On May 8, 2017, Casey Scott Butler, MD saw Plaintiff and noted that he has retained "neck pain and stiffness that has remained since radiation treatment." *Id.* at 21.  Dr. Butler also noted, "[Plaintiff] was previously on chronic pain medication for chronic neck pain, however he reports that this pain medication was stopped last Thursday and since then his neck pain has worsened (he is not sure why it was stopped)." *Id.*  "[F]rom [Plaintiff's] complaints," Dr. Butler concluded that "it sounds like [Plaintiff] would benefit from being restarted on his previous chronic pain regimen of Norco 10 TID. This regimen should be provided and monitored by facility providers." *Id.* at 22.

On May 9, 2017, Plaintiff had a follow-up appointment at OUMC ORL Clinic.  On May 11, 2017, Plaintiff visited John Anglin, MHS, PA-C for a chronic clinic and routine physical examination, where he instructed Plaintiff "to follow-up sick call if experiencing any signs and symptoms that warrant treatment."  PA-C Anglin saw Plaintiff again on May 19, 2017 and noted that Plaintiff "complained of continued neuropathic neck pain." *Id.* at 12-18.  PA-C. Anglin did not prescribe any pain medication at the time of Plaintiff's visit. *Id.*  PA-C Anglin noted he "would consider a trial of [tricyclic antidepressant]

for neuropathy," but also noted its risk factors, common side-effects, and the likely "high level of sedation typically seen with the dosage needed." *Id.*

On September 22, 2017, LPN Elesa Feltham noted an alert order for Plaintiff's Medical/Chronic Clinic.  On November 6, 2017, Plaintiff saw Dr. Matthew Adam Sharum and complained of neck pain. *Id.* at 9-10.  Dr. Sharum noted, "[g]iven patient's complaint and symptoms he may benefit from resumption of chronic regimen, to be provided and administered per facility providers discretion." *Id.*  On December 14, 2017, Plaintiff saw PA-C Anglin again and complained of neuropathic neck pain. *Id.* at 1-8.  PA-C Anglin neither prescribed Plaintiff any pain medication nor recommended he be placed back on a pain-management regimen. *See id.*

**B.    Plaintiff's grievance process.**

On May 4, 2017, Plaintiff filed a Request to Staff with the Lexington Assessment and Reception Center.  Doc. 26, Ex. 3, at 1.  Plaintiff's request was "[w]hy did you take me off my pain meds?" and the action he requested was "[p]lease start them up again." *Id.*  Plaintiff indicated on the report that the request "does not relate to a pending misconduct report." *Id.*

On May 23, 2017, Defendant Fisher responded to Plaintiff's Request to Staff with the following: "You were caught diverting (palming) them – a misconduct write up & incident report filed. You will no longer get narcotic

pain meds at this facility – you have previously been told of this consequence previously." *Id.*

On May 25, 2017, Plaintiff filed an Inmate/Offender Grievance that stated he informed LPN Nordstrom "that [his] pain meds where not working and if she was going to contentue to crush my pain meds I would appreciate it if she would crush the pills in front of me." *Id.* at 2-3.  Plaintiff states that on May 3, 2017 he "went to window and [LPN Nordstrom] told [Plaintiff] the doctor had taken [Plaintiff] off [his] pain meds.  [Plaintiff] asked her why and she said she did not know why." *Id.* at 3.  Plaintiff also stated that he "was going to ask Mrs. Norstrum [sic] why [he] never got a misconduct from her but she is no longer here." *Id.* at 1.

The reviewing authority denied relief the same day, stating "Dr. Fisher has indicated that there is questionable indication for long term narcotic use for your current situations & known objective clinical evidence.  This, combined with the recent and past diversion of medication; the provider has discontinued the medication." *Id.* at 4.

On June 6, 2017, Plaintiff filed a Misconduct/Grievance Appeal to Administrative Review Authority" stating that "Doctor Fisher violated P-030100 Section – 03 Facility Operation (F).  Inmates will receive equitable treatment and the appropriate level of due process when alleged to have

violated the rules of conduct." *Id.* at 5. Plaintiff stated he did not receive a copy of the charge and "therefore I have not been charged with anything." *Id.*

On July 10, 2017, Buddy Honaker, Medical Services Manager, responded to Plaintiff's "Misconduct/Grievance Appeal to Administrative Review Authority" form and informed Plaintiff that he had filed an obsolete form. *Id.* at 7. Honaker informed Plaintiff that he "may correct any errors within 10 days of receipt of this notice" and informed him that the grievances must be submitted "properly in accordance with OP-090123." *Id.*

Plaintiff submitted another Misconduct/Grievance Appeal to Administrative Review Authority and detailed his complaint. *Id.* at 8. Plaintiff included writing on the bottom of the form outside of the Response area. *See id.* Honaker responded to Plaintiff's re-submitted form and informed Plaintiff that "no drawing, decorating, doodling, or making comments in the margins of the pages is permitted" and that "[i]f the inmate fails to correct the errors or properly resubmit, the grievance or grievance appeal will not be answered and the inmate will have waived/forfeited the opportunity to proceed in the grievance process." *Id.* at 9. As a result, Honaker did not address Plaintiff's substantive issue and returned the original correspondence unanswered. *Id.*

### B.    Pro se pleadings.

Plaintiff is proceeding pro se.  Doc. 10.  This Court liberally construes his pleadings and holds it to "'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble,* 429 U.S. 97, 106 (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam)).  Nonetheless, a court may not serve as Plaintiff's advocate, creating arguments on his behalf.  *See generally Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

## II.    Discussion.

Defendants move for dismissal and summary judgment on four grounds: (1) Plaintiff fails to state any claim for a constitutional violation; (2) Defendants Honaker, Braggs, Jr., and Atkinson did not personally participate in the alleged constitutional violations; (3) Plaintiff is not entitled to injunctive relief; and (4) Defendants are entitled to qualified immunity.  Doc. 24, at 10-28.  Because the undersigned finds the first two grounds merit dismissal of Plaintiff's Fourteenth Amendment claim and granting of Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment claim, the court need not address the remaining two grounds.  The undersigned has considered the evidentiary materials submitted by both parties and recommends granting Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claim and Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment claim.

11

### A.    Defendants' motion to dismiss.

Defendants argue that Plaintiff does not have a protected liberty interest in the prison administrative and grievance process.  *See* Doc. 27, at 26-29.  The undersigned agrees and recommends dismissal of Plaintiff's Fourteenth Amendment claim.

### 1.    Standard.

Defendants' request for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) requires the court to examine the well-pled allegations in Plaintiff's complaint and determine if those allegations state a plausible claim for relief.  To survive a motion to dismiss, a complaint must contain enough allegations of fact which, when taken as true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  Plaintiffs must "nudge[] their claims across the line from conceivable to plausible" to survive a motion to dismiss.  *Id.*

When considering a motion to dismiss, courts look to the complaint and those documents attached or referred to in the complaint, accept as true all allegations contained in the complaint, and draw all reasonable inferences from the pleading in favor of the Plaintiff.  *Pace v. Swerdlow,* 519 F.3d 1067, 1073 (10th Cir. 2008).  A court is not bound to accept as true a plaintiff's legal assertions.  *Id.*   "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-

pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

## 2.    Plaintiff's Fourteenth Amendment claim.

Plaintiff argues that he was "denied due process when the defendants refused to follow DOC policy regarding alleged rule violations."  Doc. 10, at 15. Plaintiff claims Defendants failed to follow DOC policy OP-060125 by (1) "never issu[ing] a misconduct or a offence report for any alleged rule violations prior to removing me from my pain medications as required by DOC policy"; and (2) failing to "issue[] to the Plaintiff" any "misconduct filed or offense report . . . which was the basis for Dr. Fisher's alleged reason for taking [Plaintiff] of[f] [his] pain medication."   *Id.* (internal quotations omitted). Plaintiff alleges "ALL of the Defendant's [k]new that there was no misconduct write up or incident report filed.  They chose to ignore this fact an[d] let Dr. Fisher take away [Plaintiff's] Chronic Pain Medication."  *Id.* at 18.  Plaintiff also alleges there was "[n]o disciplinary hearing ever had," and that his "due process rights were violated when he never had a chance to call witnesses like Lt. Tumbs who was working the pill line window when these charges were being made . . . and LaDanna Warrior who found me not guilty of past diverion or Ms. Beckeiheimer who went to bat for me with Ms. Atkinson."  Doc. 28, at 4-5.

Defendants argue that Plaintiff lacks a due process interest in an administrative proceeding because it did not rise to the level of a criminal proceeding and the administration official's conduct did not implicate a protected liberty interest. *See* Doc. 27, at 27.

"A liberty interest may arise from the Constitution itself, by reasons of guarantees implicit in the word 'liberty[]' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). In the prison setting, inmates are generally subject to various restrictions. "Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.'" *Wolff v. McDonnell,* 418 U.S. 539, 555 (1974) (quoting *Price v. Johnston,* 334 U.S. 266, 285 (1948)). However, the revocation of certain rights and privileges does not mean "[t]here is [an] iron curtain drawn between the Constitution and the prisons of this country." *Id.*

In identifying state-created liberty interests, the court considers "the nature of the deprivation" rather than "the language of a particular [prison] regulation." *Sandin v. Conner,* 515 U.S. 472, 481 (1995). "'[P]rotected liberty interests are at issue in the prison setting only when an inmate is subjected to (1) conditions that 'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' or (2) disciplinary actions that

'inevitably affect the duration of his sentence.'" *Harrison v. Morton,* 490 F.
App'x 988, 994 (10th Cir. 2012) (quoting *Sandin,* 515 U.S at 484, 487)).

"[F]ailure to follow ODOC policy does not equate a constitutional
violation." *Hostetler v. Green,* 323 F. App'x 653, 657 (10th Cir. 2009) (citation
omitted).  On its own, "there is no independent constitutional right to state
administrative grievance procedures." *Boyd v. Werholtz,* 443 F. App'x 331, 332
(10th Cir. 2011).  Generally, prisoners do not have a recognized constitutional
right to participate in prison administrative procedures.  *See id.*; *see, e.g.,*
*Brewer v. Gilroy,* 625 F. App'x 827, 838 (10th Cir. 2015) ("Mr. Brewer has no
independent due process rights that arise out of OSP or ODOC employees'
disposition of internal grievances."); *Spry v. McKune,* 479 F. App'x 180, 181
(10th Cir. 2012) (affirming district court's dismissal of plaintiff's due process
claim premised upon unavailability of administrative remedy for failure to
state a claim upon which relief can be granted, noting no "protected liberty
interests in pursuing prison formal grievance procedures"); *Murray v. Albany
County Bd. of Cty. Comm'rs*, No. 99-8025, 2000 WL 472842, at *2 (10th Cir.
Apr. 20, 2000) ("[P]rison grievance procedures do not 'give rise to a protected
liberty interest requiring the procedural protections envisioned by the
fourteenth amendment.'") (citation omitted).

Viewing all factual allegations in the light most favorable to Plaintiff,
the undersigned finds Plaintiff suffered no constitutional violation when DOC

policy was not followed and does not have a protected liberty interest in prison grievance proceedings. Plaintiff fails to state a valid claim for relief and the undersigned recommends the dismissal of Plaintiff's Fourteenth Amendment claim with prejudice.

### B.    Defendants' motion for summary judgment.

Defendants argue that Defendant Fisher's conduct in revoking Plaintiff's opiates does not rise to the level of deliberate indifference and thus resulted in no Eighth Amendment violation. Defendants Honaker, Braggs, Jr., and Atkinson also argue they did not personally participate in the alleged Eighth Amendment violation as required under § 1983. The undersigned agrees and recommends granting Defendants' motion for summary judgment.

### 1.    Standard.

The court shall grant summary judgment "if [Defendants show] there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering Defendants' motion, the court views the facts and inferences drawn from the record "in the light most favorable" to Plaintiff. *See Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006) (citation omitted).

To defeat summary judgment, the nonmovant need not convince the court that it will prevail at trial, but he must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to

16

show that there is a question of material fact that the jury must resolve. *See Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant must identify sufficient evidence pertinent to the material issues of the case; "[c]onclusory allegations . . . will not suffice." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002) (internal quotation marks omitted). "Material facts" are "facts that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

Parties may establish the existence or nonexistence of a material disputed fact through: (1) citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or (2) demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

"When the pro se plaintiff is a prisoner, a court-authorized investigation and report by prison officials (referred to as a *Martinez* report) is not only proper, but may be necessary to develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (citing *Martinez v. Aaron,* 50 F.2d 317, 318-19 (10th Cir. 1991)). Generally, a "*Martinez* report is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Id.* at 1111 (citing *Sampley v. Ruettgers,* 704 F.2d 491, 493 n.3 (10th Cir. 1983). "A bona fide factual dispute exists even when the plaintiff's factual allegations that are in conflict with the *Martinez* report are less specific or well-documented than those contained in the report." *Id.* A court "cannot resolve material disputed factual issues by accepting the report's factual findings when they are in conflict with pleadings or affidavits." *Id.*

As an initial matter, by failing to respond to the facts in Defendant's summary judgment motion, Plaintiff implicated a local court rule providing that "[a]ll material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the nonmovant. . . ." LCvR 56.1(e). Accordingly, the material facts as submitted by Defendant are deemed admitted. However, the court retains an independent duty, even in the absence of a response by the

adverse party, to determine that summary judgment is appropriate. *See Reed v. Bennett*, 312 F.3d 1190, 1194-1196 (10th Cir. 2002) ("[T]he district court may not grant the [summary judgment] motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law."). The court is not limited to the materials cited in Plaintiff's response, but rather may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). Moreover, a pro se litigant's pleadings are to be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Hall*, 935 F.2d at 1110; *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## 2. Plaintiff's Eighth Amendment claim.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," which includes deliberate indifference to the serious medical needs of prisoners in custody. *Estelle*, 429 U.S. at 104-06. To prevail on an Eighth-Amendment deliberate-indifference claim against prison officials, an inmate must satisfy "a two-pronged inquiry, comprised of an objective and subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The objective component is met where the deprivation is "sufficiently serious." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotation marks omitted). The subjective component requires a plaintiff to demonstrate

that officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Under this standard, "a prison official cannot be liable 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Self*, 439 F.3d at 1231 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

A court cannot draw such an inference when an inmate voices a "mere[ ] disagree[ment] with a diagnosis or a prescribed course of treatment," *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999), because the inmate has a constitutional right only to medical care, but "not to the type or scope of medical care which he personally desires." *Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) (quoting *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968)). Instead, the subjective component of this inquiry requires an inmate to provide evidence—whether direct or circumstantial—from which a jury could reasonably infer the medical officials consciously disregarded an excessive risk to the inmate's health or safety. *Self*, 439 F.3d at 1235.

The Eighth Amendment protects inmates from the "infliction of punishment"—it does not give rise to claims sounding in negligence or medical malpractice. *Id.*; *see also Mata v. Saiz*, 427 F.3d 745, 758-59 (10th Cir. 2005).

So, even if a prison official's actions fell below a reasonable standard of care, "the negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Self*, 439 F.3d at 1233 (quoting *Perkins*, 165 F.3d at 811).

A deliberate-indifference claim faces "a high evidentiary hurdle." *Id.* at 1232. This hurdle is not insurmountable, "[b]ut where a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law." *Id.* at 1232-33.

Under the objective component, Plaintiff must first produce evidence that his medical condition is sufficiently serious. Because of Plaintiff's cancer diagnosis and treatment, "[Plaintiff] developed a sequela, a condition that is a consequence of a previous disease [that in this case was caused by Plaintiff's cancer], which causes chronic, neuropathic pain in the lower face and neck/hypopharyngeal areas." Doc. 26, at 5. Defendants concede that Plaintiff's "medical condition (glossectomy) is sufficiently serious." Doc. 27, at 20. The undersigned finds that Plaintiff had a sufficiently serious medical condition that meets the objective prong of the deliberate indifference analysis.

Plaintiff must next produce subjective evidence of a genuine issue of material fact regarding Defendant Fisher's culpable state of mind by

demonstrating that he knew of and disregarded an excessive risk to Plaintiff's health and safety.

Plaintiff argues Defendant Fisher exhibited a culpable state of mind because he did not address (1) Plaintiff's request to continue the opiates, and (2) "Dr. Fisher never talked to Plaintiff about taking his pain medication on that evening of May 3rd, 2017. [Defendant Fisher] has never talked to since he took my pain medication . . . the last time Dr. Fisher has said anything to me about taking my medication, that was on May 25th, 2017." Doc. 28, at 3.

Defendants argue that "[n]othing in Plaintiff's medical records indicates that Defendant Fisher disregarded a substantial risk of serious harm to Plaintiff." Doc. 27, at 22. Defendants cite Plaintiff's regular care and doctor visits, continued medication to treat his various health issues, and past issues of pain medication diversion and counseling as evidence that Defendant Fisher did not disregard an excessive risk to Plaintiff's health and safety. *Id.* at 22-23.

Here, from at least May 24, 2016 through May 3, 2017, Defendant Fisher prescribed Plaintiff an opiate, Norco, to treat continued pain from the sequela. Doc. 26, Ex. 2, at 28, 32, 34, 39. In addition to the continued prescription, the record indicates that from at least November 2013 to December 2017 Plaintiff met with Defendant Fisher and other medical specialists for various physical exams and that Plaintiff received counseling regarding allegations of and

consequences from diverting or "palming" medication. *See generally id.* at 1-39.

The undisputed facts show Defendant Fisher was also attuned to Plaintiff's long-term health. To alleviate long-term opiate use, Defendant Fisher prescribed Plaintiff a taper of Gabapentin to see if that was a viable alternative for Plaintiff. *Id.* at 35. Defendant Fisher also prescribed the NSAID Meloxicam. *Id.* at 34. When the Gabapentin trial failed, Defendant Fisher continued to prescribe Plaintiff Norco until the May 3, 2017 palming/diverting incident.

The undisputed facts demonstrate Plaintiff has also been seen by other medical personnel since Defendant Fisher rescinded his opiate prescription. Two doctors recommended resumption of Plaintiff's pain-management regimen, but at the facility provider's discretion. *Id.* at 21-22, 9-10. And PA-C Anglin made no such recommendation. *Id.* at 1-8, 18.

Plaintiff requests that he be put back on his "'chronic pain medication' the way it was before Dr. Fisher came to work here." Doc 10, at 13. "[E]ven if the medical staff was incorrect to conclude [the defendant] intended to abuse his medication, that erroneous assessment does not rise to the level of deliberate indifference. . . . it reflects a legitimate penological interest in prevention of drug abuse." *Todd v. Bigelow,* 497 F. App'x 839, 841 (10th Cir. 2012 (citation omitted). Plaintiff disagrees with Defendant Fisher's medical

opinion, "[b]ut a difference of opinion with the medical staff as to the optimal pain-management regimen does not amount to deliberate indifference." *Id.* at 842.[4]

Plaintiff does not allege any genuine issue of material fact that would indicate Defendant Fisher knowingly rescinded Plaintiff's prescription medication while also ignoring an excessive risk toward Plaintiff's health. Defendant Fisher prescribed two alternate pain medications to alleviate Plaintiff's chronic opiate use. Defendant Fisher's behavior does not amount to a violation of the Eighth Amendment.

Defendants Honaker, Braggs, Jr., and Atkinson also argue Plaintiff has not sufficiently demonstrated their personal involvement to sustain individual liability under § 1983. Plaintiff fails to present any type of evidence that Defendants Honaker, Braggs, Jr., or Atkinson had any type of personal involvement in violating Plaintiff's constitutional rights. Being involved in the grievance process, by itself, does not suffice to establish personal participation in a constitutional violation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations omitted). Because Plaintiff cannot satisfy this essential element of a § 1983 claim against Defendants Honaker, Braggs, Jr., and

---

[4] To the extent Plaintiff seeks injunctive relief, his claim fails. *See* Doc. 10, at 13. Because the undersigned finds Plaintiff has not stated a claim for relief under the Eighth Amendment, the undersigned recommends denying Plaintiff's request for injunctive relief.

Atkinson, the court should grant Defendants' motion for summary judgment. *See Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").[5]

## III.    Recommendation and notice of right to object.

For the reasons discussed above, the undersigned recommends the court GRANT Defendants' Motion to Dismiss and Motion for Summary Judgment and DISMISS Plaintiff's amended complaint with prejudice.  Doc. 27.

The undersigned advises the parties of their right under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2) to file an objection to the report and recommendation with the Clerk of Court.  Any objection must be filed no later than September 4, 2018.  Failure to make a timely objection to the report and recommendation waives the right to appellate review of both factual and legal questions contained herein.  *See Moore v. United States,* 950 F.2d 656, 659 (10th Cir. 1991).

---

[5]    Defendants cannot be held liable for a supervisory liability claim because Plaintiff must show an affirmative link between the supervisor and the violation, namely "three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Dodd v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (internal citations omitted).  Plaintiff makes no such showing.  Nor has Plaintiff alleged that his claimed injuries were caused by a policy sufficient to state a claim for supervisory liability.  *Id.* at 1199.

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

Entered this 13th day of August, 2018.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE