FILED
United States Court of Appeals
Tenth Circuit

April 8, 2019

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

MIKEL RAY HENDERSON,

    Plaintiff - Appellant,

v.

ROSS L. FISHER, M.D., in his individual capacity; CHERI ATKINSON, Medical Administrator in her individual capacity; JEORLD BRAGGS, JR., Warden in his individual capacity; BUDDY HONAKER, ODOC Medical Service Manager in his individual capacity,

    Defendants - Appellees.

No. 18-6178
(D.C. No. 5:17-CV-01018-C)
(W.D. Okla.)

_____

ORDER AND JUDGMENT[*]
_____

Before **HARTZ**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Mikel R. Henderson, an Oklahoma prisoner proceeding pro se, appeals the district court's dismissal and grant of summary judgment in favor of defendants on his 42 U.S.C. § 1983 claims. Henderson alleges various prison officials denied him

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

access to narcotic pain medication after he was accused of diverting (or palming) his medication in the pill line. Prison officials had repeatedly warned him there was a zero-tolerance policy for drug abuse, and he lost access to his preferred prescription when he did not heed their warnings. This, he argues, subjected him to undue pain and suffering and amounted to cruel and unusual punishment in violation of the Eighth Amendment. He further asserts his Fourteenth Amendment rights were violated when his prescription was terminated without a misconduct or offense report as required by Oklahoma Department of Corrections (DOC) policy. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

A. **Factual & Procedural Background**

Henderson was diagnosed with tongue cancer in 2013, and he received surgery and post-operative radiation treatment through 2014. To treat the residual chronic nerve pain in his neck, Henderson began receiving a narcotic pain medication, Norco, three times a day in the form of a 10-milligram oral tablet (Norco 10). After several years of use, a nurse caught Henderson attempting to divert his Norco 10 prescription in the prison pill line on May 2, 2017.[1] To little surprise, the Lexington Correctional Center medical doctor, Defendant Dr. Ross Fisher, revoked Henderson's Norco 10

---

[1] The nurse described the events as follows: "This nurse scanned inmate's ID, checked his name with his meds, ensured it was proper time to admin meds, popped meds out of prepacked bubble pack into an appropriate medication cup, put cup with contents into the drawer that is under the pill window, and slid the drawer open so the inmate could obtain his meds. When inmate took meds out of the drawer he put an already empty medication cup on top of his crushed Norco 10. So when this inmate tipped the medication cups back to simulate proper admin of meds the crushed Norco 10 was stuck in between the two medication cups." R. at 63.

2

prescription the next day. In his medical report addressing the matter, Dr. Fisher stated he "[w]ill not plan any alternative [prescription] pain meds, including neuropathy meds, given his [reaction] last summer w[ith his] trial of [G]abapentin," an alternative prescription that treats neuropathic pain that made Henderson nauseous. *Id.* at 101. Dr. Fisher concluded Henderson is "out of luck regarding pain meds through medical now"; he "has to live with [the] consequences of his actions & behavior & diversion of meds clearly support that he does not need med." *Id.*

When Henderson asked why his prescription had been terminated, Dr. Fisher explained, "You were caught diverting (palming) them—a misconduct write up and incident report filed. You will no longer get narcotic pain meds at this facility—You have previously been told of this consequence." *Id.* at 117. Indeed, based on prison health records, this was not Henderson's first incident of diversion; records indicate Henderson "had been accused of similar behavior about one year [prior]" and prison medical staff had warned Henderson about the "no tolerance policy" for substance abuse at least twice. *Id.* at 101; *see id.* at 104, 107 (consequences of diversion explained to Henderson on May 24, 2016 and August 18, 2016).

Outside specialists had mixed responses to how to treat Henderson's pain after the Norco 10 prescription ended. First, on May 8, 2017, Henderson saw an outside medical specialist who suggested that "from patient's complaints it sounds like he would benefit from being restarted on his previous chronic pain regimen of Norco 10." R. at 99. The doctor continued, directing that "[t]his regimen should be provided and monitored by facility providers." *Id.* At the next appointment on May 19, 2017,

3

the physician assistant who treated Henderson noted his continued neuropathic pain but stated he would not prescribe opiate pain medication. The physician assistant noted he "[w]ould consider [a] trial of TCA for neuropathy, but given patient's age, CV risk factors and common (anticholinergic) side-effects of this class of medication," he did "not feel it is the safest choice, especially given the high level of sedation typically seen with the dosage needed to have neuropathy alleviating effects." *Id.* at 95. A third specialist saw Henderson on November 6, 2017, and the doctor wrote in his report, "Given patient's complaints and symptoms he may benefit from resumption of chronic pain regimen, to be provided and administered per facility providers['] discretion." *Id.* at 87. No outside specialist issued a new prescription, but all indicated a concern about the chronic pain.

     Ultimately, Dr. Fisher and the prison medical staff did not reinstate Henderson's prescription. As far as the appellate record indicates, although alternatives were considered, no chronic pain management regimen was instituted to treat Henderson. But Henderson did continue with his physical therapy treatment and continued to see outside specialists. This wasn't enough for Henderson. He filed a grievance and appeal seeking reinstatement of his Norco 10 prescription, which were denied. In response, Henderson filed a pro se civil rights complaint alleging his Eighth and Fourteenth Amendment rights had been violated. For relief, Henderson seeks access to Norco 10, a different prison doctor, and monetary damages from each defendant. Defendants prepared a report under *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), containing relevant witness testimony, documents, and administrative

rules and policies. Along with filing the *Martinez* report, Defendants moved for dismissal and summary judgment. The district court granted the joint motion, adopting the magistrate judge's report and recommendation that the court dismiss Henderson's Fourteenth Amendment claim and grant Defendants' motion for summary judgment regarding the Eighth Amendment claim. Henderson now appeals.

### B. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a district court's grant of summary judgment, we examine the record de novo and "may affirm for any reason supported by the record." *Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1005 n.8 (10th Cir. 2014). We also "review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). In reviewing both summary judgment orders and 12(b)(6) dismissals, we "draw[] all reasonable inferences and resolv[e] all factual disputes in favor of the non-moving party." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015) (internal quotation marks omitted) (summary judgment review); *see also Peterson*, 594 F.3d at 727 (in reviewing orders to dismiss under 12(b)(6), all well-pled factual allegations are accepted as true and viewed in the light most favorable to the nonmoving party). Because Henderson is pro se, we liberally construe his pleadings, stopping "at the point at which we begin to serve as his advocate." *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

### C. Eighth Amendment Claim

#### a. Henderson Failed to Allege Defendants Atkinson, Braggs, and Honaker Personally Participated in Any Alleged Constitutional Violation

As a threshold matter, "[s]upervisory status alone does not create § 1983 liability." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). As such, an inmate must show "an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (internal quotation marks and alterations omitted). The only connection Henderson has offered between an alleged violation of his constitutional rights and Defendants Atkinson, Braggs, and Honaker is their participation in the administrative grievance and appeal process. That's not enough. The "mere response and denial of [an inmate's] grievance are insufficient to establish the requisite personal participation under § 1983." *Requena v. Roberts*, 893 F.3d 1195, 1216 (10th Cir. 2018). Accordingly, Defendants Atkinson, Braggs, and Honaker are entitled to judgment as a matter of law on the Eighth Amendment claim against them.

#### b. Dr. Fisher Is Also Entitled to Judgment as a Matter of Law on the Deliberate Indifference Claim

Henderson has adequately alleged Dr. Fisher's personal participation, but the claims against him still fail as a matter of law. The Eighth Amendment protects prisoners from "unnecessary and wanton infliction of pain," including prison officials' deliberate indifference to inmates' serious medical needs. *Estelle v.*

6

*Gamble*, 429 U.S. 97, 104 (1976). For a prisoner to succeed on a claim of deliberate indifference, he must show (1) a "sufficiently serious" medical need, *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000), and (2) prison officials knew of and disregarded "an excessive risk to inmate health or safety," *Farmer v. Brennan*, 511 U.S. 825, 837 (1976). The first prong of this standard is undisputed—Defendants have conceded Henderson's medical condition is sufficiently serious. The remaining question, therefore, is whether Dr. Fisher has shown he is entitled to judgment as a matter of law regarding the subjective component of this test. As the district court correctly concluded, he has.

    Where, as here, a prison official has discontinued an inmate's access to a narcotic substance because of that inmate's alleged abuse of his medication, the prisoner has a hard row to hoe to show deliberate indifference. If anything, the discontinuation "reflects a legitimate penological interest in prevention of drug abuse." *Todd v. Bigelow*, 497 F. App'x 839, 841 (10th Cir. 2012) (holding no deliberate indifference when inmate's prescription revoked due to diversion and prison doctors prescribed a less effective alternative). As unhappy about the change as Henderson may be, an inmate has only a constitutional right to care, "not to the type or scope of medical care which he personally desires." *Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) (internal quotation marks omitted).

    The undisputed evidence shows that, throughout his time at Lexington Correctional Facility, Henderson received continuous and extensive care to treat his cancer and its residual effects. The prison health care providers tried a variety of

approaches and prescriptions to treat Henderson's chronic pain, and it was not until he was caught diverting medication (after multiple allegations and warnings) that he finally lost his prescription. At the heart of this civil rights complaint is Henderson's access to narcotic pain medication, Norco 10—he wants it back. But given the multiple allegations of diversion against him, the several warnings he received about the prison's zero-tolerance policy, the heightened concern about diversion in the prison environment, and the alternative treatments explored, Dr. Fisher's ultimate decision to terminate Henderson's Norco 10 prescription simply does not rise to the level of utter disregard for inmate health and safety. *See Johnson v. Richins*, 438 F. App'x 647, 649 (10th Cir. 2011) (holding no deliberate indifference when prison officials suspended inmate's prescription for suspected diversion of his medication). Further, despite Henderson's reliance on them, the outside specialists' notes regarding the reinstatement of Henderson's narcotic prescription do not change the analysis, particularly where one explicitly left the ultimate decision to Dr. Fisher's discretion, the other merely offered reinstatement as a suggestion, and the third declined to reinstate the prescription outright. *See Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995) (doctors' "disagreement as to the proper course of [a prisoner's] treatment" is "not actionable under the Eighth Amendment").

The reach of the Eighth Amendment is limited—"the negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006) (internal quotation marks omitted). Where, as here, "a doctor orders treatment

consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law." *Id.* at 1232-33. Although Dr. Fisher declined to reinstate Henderson's Norco 10 prescription, pain management alternatives were explored, and Henderson's condition continued to be monitored closely. A disagreement, even one as sharp as this, between a prisoner and the doctor regarding his "diagnosis or a prescribed course of treatment" is insufficient as a matter of law to show a constitutional violation. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).

### D. Fourteenth Amendment Claim

Also fruitless is Henderson's argument he was denied due process when his prison grievances did not lead to a new Norco 10 prescription. Henderson asserts the record does not support Dr. Fisher's explanation because he did not receive a write-up for the alleged diversion and no incident report was ever filed on the matter. But as we have explained before, "prisoners have no liberty interest in prison grievance procedures." *Todd*, 497 F. App'x at 842; *see also Richins*, 438 F. App'x at 649 (an inmate's "claim that [a prison official] mishandled his prison grievances does not implicate any due-process rights"). As far as prison regulations go, state-created liberty interests protected by the Fourteenth Amendment are "limited to freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional

9

violation."). No such restraint is at issue here. Accordingly, Henderson has failed to state a claim upon which relief may be granted and the district court's order to dismiss was appropriate.

### E. Conclusion

The district court's order granting summary judgment and dismissal is **AFFIRMED**. Henderson's motion for leave to proceed in forma pauperis is granted. The relevant statute, 28 U.S.C. § 1915(a)(1), does not permit litigants to avoid payment of filing and docketing fees, only the prepayment of those fees. Although we have disposed of the matter on the merits, Henderson remains obligated to pay all filing and docketing fees until paid in full.

    Entered for the Court

    Gregory A. Phillips
    Circuit Judge

**UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT
OFFICE OF THE CLERK**

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker     Chris Wolpert
Clerk of Court     Chief Deputy Clerk

April 08, 2019

Mr. Mikel Ray Henderson
#558324
Lexington Assessment & Reception Center
P.O. Box 260
Lexington, OK 73051-0260

**RE:**     18-6178, Henderson v. Fisher, et al
           Dist/Ag docket: 5:17-CV-01018-C

Dear Appellant:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc:     Jacqueline R. Zamarripa

EAS/mlb